No. 22-11977-HH

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

RJ'S INTERNATIONAL TRADING, LLC,

*Plaintiff-Appellant*,

v.

CROWN CASTLE SOUTH LLC,

*Defendant-Appellee*.

———————————

On Appeal from the United States District Court
for the Southern District of Florida
No. 20-25162-civ-Altonaga/Torres

———————————

## APPELLEE'S ANSWER BRIEF

———————————

Eve A. Cann
Desislava K. Docheva
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
100 S.E. Third Avenue, Suite 1620
Fort Lauderdale, FL 33394
(954) 768-1600
ecann@bakerdonelson.com
ddocheva@bakerdonelson.com

Joshua Tropper
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
3414 Peachtree Road, NE, Suite 1500
Atlanta, GA 30326
(404) 577-6000
jtropper@bakerdonelson.com

*Counsel for Appellee*

December 14, 2022

## APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the Appellee, Crown Castle South LLC ("Crown Castle") hereby states that the following individuals and entities have an interest in the outcome of this case:

Altonaga, The Honorable Cecelia, United States District Court Judge

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC – Counsel for Appellees

Cann, Eve A. – Counsel for Appellee

Crown Castle South LLC - Appellee

Docheva, Desislava K. – Counsel for Appellee

Kravec, Joshua A. – Counsel for Appellee

Leiva, Aldo M. – Counsel for Appellee

Pierre, Faudlin – Counsel for Appellant

Pierre Simon – Counsel for Appellant

RJ's International Trading, LLC – Appellant

Simon, Jennito – Counsel for Appellant

Torres, The Honorable Edwin – United States Magistrate Judge

Tropper, Joshua – Counsel for Appellee

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-3(b), Crown Castle also makes the following disclosures:

**1. For non-governmental corporate parties, all parent corporations:**

Crown Castle South LLC, a Delaware limited liability company is wholly owned by Crown Castle Towers LLC, a Delaware limited liability company. Crown Castle Towers LLC is wholly owned by CC Towers Grantor LLC, a Delaware limited liability company. CC Towers Grantor LLC is wholly owned by CC Towers Holding LLC, a Delaware limited liability company. CC Towers Holding LLC is wholly owned by Crown Castle USA Inc., a Pennsylvania corporation. Crown Castle USA Inc. is wholly owned by Crown Castle Operating Company, a Delaware corporation. Crown Castle Operating Company is wholly owned by Crown Castle International Corp., a Delaware corporation.

**2. For non-governmental corporate parties, all publicly held companies that hold 10% or more of the parties' stock:**

As of the date of this filing, no publicly held company holds 10% more of stock of Crown Castle.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Crown Castle respectfully requests oral argument in this case to afford the Court the opportunity to pose any questions it may have concerning the facts or the parties' respective positions on appeal, as well as to address any new issues presented in the reply brief that require clarification and further argument. Crown Castle believes that participation in oral argument will be beneficial, and that the decisional process will be significantly aided by this Court's grant of oral argument. This could be especially true if the Court chooses to look beyond the narrow dispositive issue Crown Castle articulates herein to consider issues raised in Appellant's initial brief which the district court did not rely upon in deciding the order on appeal.

## **TABLE OF CONTENTS**

APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

    1. For non-governmental corporate parties, all parent corporations: .........C-2

    2. For non-governmental corporate parties, all publicly held companies that
       hold 10% or more of the parties' stock: ..................................................C-2

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF CITATIONS ........................................................................................iv

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUE................................................................................1

STATEMENT OF THE CASE.................................................................................1

    A. Factual Background ..........................................................................1

    B. Procedural History ...........................................................................4

    C. Standard of Review...........................................................................9

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT .........................................................................................................10

    A. The District Court Did Not Abuse Its Discretion When It Denied
       Entitlement to Attorney's Fees.............................................................10

    B. The District Court Did Not Abuse Its Discretion When It Denied
       Entitlement to Attorney's Fees on the Sole Ground that the Fee
       Provision Was Not a Covenant Running with the Land ........................17

        (i) *Florida law strictly construes attorney's fee provisions*..............20

        (ii) *Florida law construes arbitration provisions broadly based on
           public policy that favors arbitration*............................................22

CONCLUSION.......................................................................................................26

CERTIFICATE OF COMPLIANCE......................................................................28

CERTIFICATE OF SERVICE ...................................................................29

## <u>TABLE OF CITATIONS</u>

<u>Cases</u>                                                                                      <u>Pages</u>

*Civix Sunrise, GC, L.L.C. v. Sunrise Road Maint. Ass'n, Inc.*,
    997 So. 2d 433 (Fla. 2d DCA 2008) .............................................................21

*Cox Enters., Inc. v. News-Journal Corp.*,
    510 F.3d 1350 (11th Cir. 2007) .......................................................................9

*Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*,
    678 F.3d 1199 (11th Cir. 2012) .......................................................................9

*Hayslip v. U.S. Home Corp.*,
    336 So. 3d 207 (Fla. 2022) .....................................................12, 13, 14, 16

*In re Univ. Centre Hotel, Inc.*,
    323 B.R. 306 (N.D. Fla. 2005) ........................................................................20

*Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*,
    906 F.3d 1329 (11th Cir. 2018) .....................................................................20

*J.H. Williams Oil Co., Inc. v. Harvey*,
    872 So. 2d 287 (Fla. 2d DCA 2004) ...............................................................13

*Keogh v. Peck*,
    259 Ill. App. 503 (Ill. App. Ct. 1931) ...........................................................12

*Kirschner v. Baldwin*,
    988 So. 2d 1138 (Fla. 5th DCA 2008) ............................................................19

*Koechli v. BIP Intern., Inc.*,
    870 So. 2d 940 (Fla. 1st DCA 2004) ...........................................22, 23, 24, 25

*Lundeberg v. Dastrup*,
    497 P.2d 648 (Utah 1972) ...............................................................................12

*Maule Indust., Inc. v. Sheffield Steel Prod., Inc.*,
    105 So. 2d 798 (Fla. 3d DCA 1958) .......................................................15, 16

*Mims/Alafia, LLC v. Mosaic Fertilizer, LLC*,
    No. 8:05-cv-2271-T-26EAJ, 2007 WL 2071319,
    (M.D. Fla. July 19, 2007) ...............................................................................21

*Ocwen Fin. Corp. v. Holman*,
    769 So. 2d 481 (Fla. 4th DCA 2000) ..................................................22, 23, 25

*Paloma Inv. Ltd. P'ship v. Jenkins*,
    978 P.2d 110 (Ariz. Ct. App. 1998) ..............................................................12

*PNC Bank, Nat'l Ass'n v. MDTR, LLC*,
    243 So. 3d 456 (Fla. 5th DCA 2018) ............................................................20

*Sahyers v. Prugh, Holliday & Karatinos, P.L.*,
    560 F.3d. 1241 (11th Cir. 2009) ......................................................................9

*Sand Lake Hills Homeowners Ass'n v. Busch*,
    210 So. 3d 706 (Fla. 5th DCA 2017) ............................................................21

*Schwartz v. W-K Partners*,
    530 So. 2d 456 (Fla. 5th DCA 1988) ............................................................21

*Succar Succar v. Safra Nat'l Bank of New York*,
    237 Fed. App'x 526 (11th Cir. 2007) ............................................................20

*Winn-Dixie Stores, Inc. v. Dolgencorp., Inc*.,
    964 So. 2d 261 (Fla. 4th DCA 2007) ...................................................11, 14, 16

## <u>Statutes</u>

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

**<u>Rules</u>**

11th Cir. R. 26.1 ...........................................................................C-1, C-2

12 Fla. Jur. 2d Costs § 82 (2021) ..............................................................20

Fed. R. App. P. 26.1...................................................................C-1, C-2

Fed. R. App. P. 32..........................................................................28

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction based on diversity jurisdiction under 28 U.S.C. § 1331.  This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal arises from the district court's final order denying entitlement to attorney's fees.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion when it denied Appellant, RJ's International, LLC ("RJI"), entitlement to attorney's fees where the operative contractual fee provision was not a covenant running with land, but rather a term in an easement agreement between two parties unrelated to RJI and Crown Castle.

## STATEMENT OF THE CASE

### A.    Factual Background

On October 21, 1992, Hidden Valley Corp. ("Hidden Valley") entered into an Option and Lease Agreement (the "Lease") with Bellsouth Mobility, Inc. ("Bellsouth") for certain real property labeled the "storage lot in the rear of 17000 South Dixie Hwy, Miami, Dade County, State of Florida" (the "Leased Property"). After the commencement of the Lease, on January 26, 1993, Hidden Valley, as Grantor, and Bellsouth, as Grantee, executed a Grant of Non-Exclusive Easement

(the "Easement Agreement"). D.E. 164-1.[1] The Easement Agreement was made "in favor of [Bellsouth], its successors and assigns ("Grantee")." *Id*. Bellsouth's successor company is New Cingular Wireless PCS, LLC/AT&T Wireless Services. D.E. 1, ¶ 15.

Hidden Valley and Bellsouth agreed to be bound by the following provision (the "Fee Provision") in the Easement Agreement:

> 8. <u>Remedies for Breach</u>. The parties hereto shall each have the right to enforce the terms of this Easement and the rights and obligations created herein by all remedies provided under the laws of the State of Florida, including, without limitation, the right to sue for damages for breach or for injunction or specific performance. In the event that it is necessary for either party hereto to file suit in order to enforce the terms hereof, then the prevailing party in such suit shall be entitled to receive reasonable attorney's fees and court costs in addition to any other award that the Court might make, from the non-prevailing party.

D.E. 164-1.

On October 29, 1993, Hidden Valley sold the property with the current address of 17000 South Dixie Highway, Miami, Florida 33157 (the "Easement Property") to R.J. International Trading, Inc. While the Easement Property included the land tract that was subject to the Easement Agreement (*i.e.*, the servient estate),[2] Hidden

---

[1] References to the district court's docket entries in this case will appear as "D.E. [#]." Crown Castle will include D.E. 31, 71, 71-4, 71-7, 154, and 155 in its appendix to the Answer Brief.

[2] Prior to October 29, 1993, Hidden Valley owned both the Leased Property and the Easement Property, which were adjacent lots under common ownership.

Valley's sale of the Easement Property did not transfer or convey Hidden Valley's rights as Grantor under the Easement Agreement.  D.E. 144-4; D.E. 71 at 3; 71-7 at 10-14.[3]

On June 2, 1999, Bellsouth entered into a Site Designation Supplement and Memorandum of Sublease (the "Sublease") with Crown Castle.  Pursuant to the Sublease, Crown Castle was permitted to use a portion of the Leased Property to install and maintain a cell tower with nonexclusive rights of ingress and egress to the Leased Property, including access to and use of any and all easements (such as the easement created in the Easement Agreement) available to Bellsouth.[4]  D.E. 71-4.  Subsequently, in 2005, R.J. International Trading, Inc. conveyed the Easement Property to RJI.  D.E. 144-6.

The pertinent record demonstrates that: (i) Hidden Valley and BellSouth ***are*** parties and signatories to the Easement Agreement; (ii) RJI and Crown Castle are ***not*** parties or signatories to the Easement Agreement; (iii) RJI is ***not*** a successor of

_____

Although Hidden Valley sold the Easement Property to RJI, it retained ownership of the Leased Property.  D.E. 71.

[3]  In its Complaint, Plaintiff acknowledged that Hidden Valley and Bellsouth are parties to the Easement Agreement.  D.E. 1, ¶ 11.

[4]  The relationship between Bellsouth and Crown Castle is that of sublessor-sublessee in relation to a portion of the Leased Property.  Crown Castle is not a successor of BellSouth—it is an independent entity.  In its Complaint, Plaintiff alleged that New Cingular Wireless PCS, LLC/AT&T Wireless Services is the "successor company of BellSouth."  D.E. 1, ¶ 15.

Hidden Valley, but only a purchaser and subsequent fee owner of the Easement Property; (iv) Crown Castle is *not* a successor of Bellsouth, but only a sublessee of a portion of the Leased Property; (v) Hidden Valley has *not* assigned or otherwise transferred its rights as Grantor to RJI; (vi) Bellsouth has *not* assigned or otherwise transferred its rights as Grantee to Crown Castle; and (vii) RJI and Crown Castle have *not* agreed to be bound by the Fee Provision for any suit arising from the Easement Agreement.

### B.    Procedural History

On December 18, 2020, RJI filed suit against Crown Castle.  D.E. 1.  The case proceeded on RJI's claims for breach of easement agreement, unjust enrichment, and trespass.  D.E. 31

On November 15, 2021, the district court granted RJI's Motion for Partial Summary Judgment on the Issue of Liability and Equitable Relief ("Summary Judgment Order").  D.E. 104.  In the Summary Judgment Order, the district court briefly addressed Crown Castle's argument that, as a non-signatory to the Easement Agreement and a third party, Crown Castle could not be sued for breach of contract and compensatory damages, although the Easement Agreement could be enforced against Crown Castle through equitable injunctive relief.  *Id*. at 10.[5]   The district

---

[5] In its Motion for Partial Summary Judgment, RJI correctly acknowledged that Crown Castle and RJI are "third parties and non-signatories" to the Easement Agreement.  D.E. 73 at 3.

court noted that other "courts have not directly addressed" Crown Castle's argument, but "have heard and granted relief to plaintiffs who have utilized a breach of contract or easement claim to enforce easement covenants against successors-in-interest." *Id*. Without making any factual findings that RJI and Crown Castle were parties to the Easement Agreement, or successors-in-interest of Hidden Valley or Bellsouth, the district court ruled that RJI had "standing to assert its breach of Easement Agreement claim against" Crown Castle. *Id*.

Thereafter, in January 2022, RJI's claims for compensatory and punitive damages were tried before a jury. On January 25, 2022, the jury returned a verdict, awarding RJI $1 in nominal damages alone for its breach-of-easement claim, $637.74 for its unjust enrichment claim, and $40,000 for its trespass claim, but the jury declined to award punitive damages. D.E. 139. Following RJI's election of remedies, on January 26, 2022, a Final Judgment in the amount of $1 in nominal damages (breach of easement agreement) and $40,000 (trespass) was entered, while the unjust enrichment claim was dismissed with prejudice. D.E. 143.

Post-judgment, on March 17, 2022, Crown Castle filed a Motion to Determine Entitlement to Attorney's Fees and Nontaxable Expenses Prior to Submissions on

Amount of Fees and Costs ("Preliminary Entitlement Motion").  D.E. 154.[6]  Crown

Castle disputed RJI's claimed entitlement to attorney's fees on multiple grounds: (i)

RJI and Crown Castle were not parties and signatories to the Easement Agreement;

(ii) RJI and Crown Castle did not contract for attorney's fees in January 1993—

instead the Fee Provision was a fee agreement made by and applicable to Hidden

Valley and Bellsouth only; (iii) RJI and Crown Castle had not stepped into the shoes

of Hidden Valley/Grantor and Bellsouth/Grantee so as to become parties to the

Easement Agreement; and (iv) Crown Castle has never agreed to pay attorney's fees

to Plaintiff in relation to a dispute arising from the Easement Agreement.  *Id*. at 3.

On March 18, 2022, the district court denied the Preliminary Entitlement Motion as

premature and directed RJI to file a motion limited to "the matter of entitlement."

D.E. 155.

On March 27, 2022, RJI filed its Motion for Attorneys' Fees and Costs

(Entitlement Only) (the "Entitlement Motion") seeking to rely on the Fee

Provision—a contractual fee provision negotiated and agreed to by Hidden Valley

and Bellsouth—to claim fees against Crown Castle.[7]  D.E. 158.  RJI incorrectly

---

[6] As explained therein, the Preliminary Entitlement Motion was filed following
Crown Castle's receipt of RJI's draft motion for attorney's fees and nontaxable costs
that confirmed RJI's intention to seek recovery of its fees and costs.  D.E. 154.

[7] RJI filed the Entitlement Motion with the benefit of Crown Castle's arguments
from the Preliminary Entitlement Motion.

argued that "Crown Castle and RJI were parties to the [Easement Agreement]." *Id.* at 6.  RJI also argued that: (i) "RJI and Crown Castle are persons concerned with or having a part in the easement agreement, because under the covenant running with the land provisions they are bound by the agreement," such that RJI could invoke the Fee Provision to claim attorney's fees against Crown Castle; and (ii) the phrase "parties hereto" used in the Fee Provision included "Crown Castle and RJI as successors-in-interest."[8]  *Id.* at 8-9.

On April 11, 2022, Crown Castle filed its Response in Opposition to the Entitlement Motion wherein it disputed that: (i) RJI and Crown Castle were signatories and parties to the Easement Agreement; (ii) Crown Castle was a successor-in-interest of Bellsouth; (iii) the Fee Provision, properly construed,

---

[8] Aware that RJI and Crown Castle were not parties to the Easement Agreement and were not successor entities of Hidden Valley and Bellsouth, RJI created the claim that RJI and Crown Castle were "successors-in-interest"—a phrase not found in the Easement Agreement.  This claim was wholly unsupported by the record but is essential to RJI's contention that RJI and Crown Castle were bound by the Fee Provision, even though they were not "parties" to the Easement Agreement.  D.E. 158; *see also* D.E. 73 for RJI's concession that RJI and Crown Castle were not parties to the Easement Agreement.  In fact, RJI did not define "successors-in-interest," but repeatedly used this confusing term despite it being contrary to the record (which establishes that Hidden Valley and Bellsouth had not relinquished their rights as Grantor and Grantee under the Easement Agreement).  At most, "successors-in-interest" could mean, as RJI articulated in its Entitlement Motion, that RJI and Crown Castle were persons having some relationship to the easement: RJI as the burdened landowner and Crown Castle as the sublessee having access to the easement.

applied to anyone other than Hidden Valley and Bellsouth; (iv) RJI's ability, as a burdened third party, to enforce the easement created in the Easement Agreement somehow afforded it standing to claim attorney's fees under the Fee Provision. D.E. 164. Crown Castle argued that the Fee Provision was not a covenant running with the land, but a personal covenant between Hidden Valley and Bellsouth. *Id*., n.8.

On May 19, 2022, the district court denied the Entitlement Motion on the basis that the Fee Provision was not a covenant running with the land. D.E. 166. The district court described the issue it was addressing as "a matter of first impression in Florida." *Id*. at 3. The district court concluded that as the Fee Provision did not affect "the enjoyment of the premises," it did not therefore "touch and concern the land." *Id*.[9] As a result, the district court held that the Fee Provision was not a covenant running with the land. *Id*.

_____

[9] The district court rejected RJI's contention that RJI and Crown Castle were parties to the Easement Agreement. D.E. 166, n.2. The district court referenced its Summary Judgment Order and noted that the order "did not conclude that [Crown Castle] was an original party to the Easement Agreement" and that it "treated [Crown Castle] as a successor-in-interest." *Id*. In fact, the Summary Judgment Order did not find that Crown Castle was a successor of Bellsouth or that RJI was a successor of Hidden Valley, despite "treating" Crown Castle as such for the specific limited purpose of allowing RJI to enforce the easement against Crown Castle through a direct claim for breach of contract. The Summary Judgment Order merely relied on successor-in-interest cases to find that RJI had standing to enforce the Easement Agreement under a breach-of-contract cause of action against Crown Castle in its capacity as a third party having the right to use the easement. That was the extent of the district court's "treatment" of Crown Castle as a successor-in-interest.

8

### C.    Standard of Review

A district court's denial of a motion for attorney's fees and costs is reviewed for abuse of discretion.[10]  *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d. 1241, 1244 (11th Cir. 2009).  Abuse of discretion can be found "only when a decision is in clear error, the district court applied an incorrect legal standard or followed improper procedures, or when neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review." *Friends of the Everglades v. South Florida Water Mgmt. Dist*., 678 F.3d 1199, 1201 (11th Cir. 2012); *Cox Enters., Inc. v. News-Journal Corp*., 510 F.3d 1350, 1360 (11th Cir. 2007).

### SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion when it denied RJI entitlement to attorney's fees and costs, as its decision demonstrates neither clear error nor application of an incorrect legal standard.  The district court's decision properly focused on the narrow issue of whether the Fee Provision runs with the land to subject a third party, which has limited access to the land, to this provision.  The district court's decision was well reasoned and legally sound, considering the authorities it relied upon and the analysis it performed.

---

[10] Appellant's Initial Brief did not discuss the standard of review.

9

RJI, on the other hand, fails to state the standard of review and implicitly proceeds as if *de novo* review were appropriate, asserting various claims that are not pertinent to the dispositive issue on appeal—whether the Fee Provision is a covenant running with land that could subject a third party to attorney's fees based on a fee provision agreed by unrelated parties.  Moreover, RJI's *de novo* arguments are based on the false premise that RJI and Crown Castle have stepped into the shoes of the original Grantor and Grantee under the Easement Agreement, who negotiated and agreed to the Fee Provision, or are their corporate successors.  However, RJI's premise finds no support in the pertinent record.  In fact, the record exposes RJI's confusion as to its own status as a purchaser and a subsequent fee owner of the Easement Property, as well as Crown Castle's status as a sublessee of a portion of the Leased Property having the right to use the easement tract.  Notwithstanding any relationship to the easement, RJI and Crown Castle are not parties to the Easement Agreement and the Fee Provision, and they have no contract for fees between them. The district court's denial of entitlement to attorney's fees was correct.  It was not an abuse of discretion, and its decision should be affirmed.

## **ARGUMENT**

### A.    **The District Court Did Not Abuse Its Discretion When It Denied Entitlement to Attorney's Fees**

The district court properly focused its analysis on the language of the Fee Provision to determine whether the Fee Provision was a covenant running with the

land.  After its review of the Fee Provision and the relevant legal authorities, the district court held that "[n]ot even a generous interpretation of this provision yields a conclusion that it somehow affects the enjoyment of the premises" and therefore the Fee Provision did not touch and concern the land sufficiently to be considered a covenant running with the land.  D.E. 166 at 3.

The district court began its analysis outlining the difference between a personal covenant and a real covenant, and it cited the relevant test that distinguishes between the two types of covenants.  *Id*.  at 2.  The district court next cited *Winn-Dixie Stores, Inc. v. Dolgencorp., Inc*. for the applicable "test to determine whether a covenant runs with the land [and which] contains three elements: (1) there must be a covenant that touches and concerns the land, (2) with the intent that the covenant run with the land, and (3) notice of the restriction to the party against whom enforcement is sought."  *Id*. (citing *Winn-Dixie Stores, Inc. v. Dolgencorp., Inc*., 964 So. 2d 261, 265 (Fla. 4th DCA 2007)).[11]

The district court proceeded to consider the first element of the *Winn-Dixie* test—whether the Fee Provision touched upon and concerned the land.  The district court held that, while this issue was "a matter of first impression in Florida," other jurisdictions "agree that an attorney's fees provisions does not touch and concern the

---

[11] RJI agrees that the *Winn-Dixie* test is the relevant test for a covenant running with the land.  Appellant Br. at 14.

land."[12]  The district court cited persuasive and relevant authorities that had directly considered the issue whether an attorney's fee provision was a covenant running with the land.  *Id*. at 3 (citing *Paloma Inv. Ltd. P'ship v. Jenkins*, 978 P.2d 110, 116 (Ariz. Ct. App. 1998); *Lundeberg v. Dastrup*, 497 P.2d 648, 650 (Utah 1972); *Keogh v. Peck*, 259 Ill. App. 503, 518 (Ill. App. Ct. 1931)).  The district court found that the cited authorities from other jurisdictions—*holding that an attorney's fee provision did not run with the land*—"comport[ed] with Florida law," namely, the Supreme Court of Florida's opinion in *Hayslip v. U.S. Home Corporation*.  *Id*. at 3 (citing *Hayslip v. U.S. Home Corporation*, 336 So. 3d 207 (Fla. 2022)).

On appeal, RJI contests the district court's conclusion that the Fee Provision did not touch and concern the land—and was not therefore a covenant running with the land—on two primary grounds.  But neither one establishes that the district court committed clear error or that it applied an incorrect legal standard so as to constitute abuse of discretion.

*First*, RJI contends that the authorities from other jurisdictions are "unpersuasive and contrary to Florida law."  Appellant's Br. at 18.  RJI disputes the

---

[12] While the district court did not find any Florida cases that have considered the issue whether an attorney's fee provision touches and concerns the land under the Florida test for a covenant running with the land, the issue is not necessarily an issue of first impression.  Fundamentally, the district court had to apply the relevant test to the Fee Provision.

district court's reliance on such authorities and argues that they "cannot be reconciled with *Harvey* and *Hayslip*" because "Florida law does not take such a rigid view." *Id.* (referring to *J.H. Williams Oil Company, Inc. v. Harvey*, 872 So. 2d 287 (Fla. 2d DCA 2004); *Hayslip*, 336 So. 3d at 209). However, RJI ignores the fact that *Harvey* and *Hayslip* did not address the issue of whether an attorney's fee provision is a covenant running with the land.

In fact, neither *Harvey* nor *Hayslip* precludes or undermines the district court's reliance on authorities from other jurisdictions that are directly on point. *Harvey* concerned a reservation agreement addressing eminent domain proceeds, not an attorney's fee provision. The issue in *Harvey* was whether title to certain land was conveyed subject to the reservation agreement. The *Harvey* court held that the language of the reservation agreement established that it was binding on all successors and assigns, as well as that the disputed conveyance of land was subject to the reservation. *Harvey*, 872 So. 2d at 289. Thus, *Harvey* is distinguishable from the case at bar.

Similarly, *Hayslip* involved an arbitration provision in a special warranty deed, not an attorney's fee provision. The issue in *Hayslip* was whether the arbitration provision was a covenant running with the land. The *Hayslip* court held that the arbitration provision "affected the occupation and enjoyment of the home, as it dictates the means by which the Hayslips must seek to rectify building defects

related to the home" and because "the outcome of the arbitration proceeding necessarily impacts the home as well." *Hayslip*, 336 So. 3d at 210. As the district court pointed out, the arbitration provision in *Hayslip* touched and concerned the land, because it was "a procedure for enforcing covenants, whereas attorney's fees are the prevailing party's remedy." D.E. 166 at 4. As a result, the district court properly rejected RJI's claim, correctly concluding that the Fee Provision was logically distinct from the arbitration provision in *Hayslip*. RJI's effort to rely on *Haylsip* is equally inapplicable.

**Second**, RJI contends that the district court should have asked a different question to determine whether the Fee Provision touched and concerned the land. As noted above, the "touch and concern" element is the first element of the *Winn-Dixie* test for a covenant running with the land. Contrary to the district court's "focus on the [Fee Provision's] effect on the 'occupation and enjoyment' of the property," RJI argues that "the focus of the touch and concern element is whether the covenant 'tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner.'" Appellant's Br.at 18 (citing *Hayslip, supra.*); D.E. 166 at 3. To detract from the "touch and concern" standard the district court used, which the Fee Provision does not meet, RJI poses a different and impertinent question regarding the "touch and concern" element. RJI then offers a conclusory and untenable answer that does not pass legal muster.

14

More specifically, RJI asserts that the Fee Provision touches and concerns the land, because it "enhances the value of the land." Appellant's Br. at 18. RJI supports its conclusory claim with a policy-like argument that an "attorney's fees provision will serve as a deterrent to those who may violate one's property rights where damages are not significant" and that is why "a fees provision is valuable and benefits the owner and its land." *Id*. But the case law it relies on, in fact, does endorse and does not go nearly so far as the proposition for which RJI cites it. In fact, as the full quote from *Maule Indust., Inc. v. Sheffield Steel Prod., Inc*. demonstrates, the "touch and concern" element does not focus on the value of the property but on the "occupation, use, or enjoyment thereof:"

> A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land. The covenant in question comes within the above stated rules and constitutes a covenant running with the land. *See* 7 Thompson on Real Property, Perm. Ed., s 3622, p. 111; 3 Tiffany on Real Property, 3d Ed., s 854, pp. 455-462; and 14 Am. Jur., Covenants, Conditions and Restrictions, ss 19, 20, pp. 495-498. As discussed in the last mentioned authority (s 20, p. 496-497):

> The primary test whether the covenant runs with the land or is merely personal is whether it concerns the thing granted and the occupation or enjoyment thereof or is a collateral or a personal covenant not immediately concerning the thing granted. *In order that a covenant may run with the land it must have relation to the land or the interest or*

*estate conveyed, and the thing required to be done must be something which touches such land, interest, or estate and the occupation, use, or enjoyment thereof.* (Emphasis added.)

*Maule Indust., Inc. v. Sheffield Steel Prod., Inc.*, 105 So. 2d 798, 801 (Fla. 3d DCA 1958) cited in *Hayslip*, 336 So. 3d at 209.

Similarly, in the *Winn-Dixie* case, the court held that the grocery exclusive covenant at issue there "was a covenant that 'touched and involved' the land… [because it] affects the mode of enjoyment of the premises." *Winn-Dixie*, 964 So. 2d. at 265. The *Winn-Dixie* test is the standard in Florida, and the district court applied it appropriately in this case.

\*    \*    \*

In sum, the district court's ruling that the Fee Provision does not meet the "touch and concern" element is well reasoned and legally sound. As the district court properly concluded that the Fee Provision did not touch and concern the land, it did not have to consider the second and third elements of the *Winn-Dixie* test to reach the conclusion that the Fee Provision was not a covenant running with the land. For the same reason, the district court did not have to examine any other provision contained in the Easement Agreement. Accordingly, the district court's opinion reveals no clear error or application of an incorrect legal standard to result in abuse of discretion. The Court should therefore affirm the denial of entitlement to attorney's fees.

**B.    The District Court Did Not Abuse Its Discretion When It Denied Entitlement to Attorney's Fees on the Sole Ground That the Fee Provision Was Not a Covenant Running with the Land**

The dispositive issue on appeal is whether the Fee Provision was a covenant running with the land that could subject a third party to attorney's fees where unrelated parties agreed to be bound by the Fee Provision in an agreement which was not signed or assumed by the third party. RJI nonetheless advances an additional argument, under an implicit *de novo* standard. The Court should disregard RJI's spurious argument, as it is not pertinent to the district court's decision and the dispositive issue on appeal.

RJI argues "that the district court erred as a matter of law by concluding that the easement agreement's attorney's fees provision did not apply to successors." Appellant's Br. at 9. The district court did not reach such a conclusion, but that "Plaintiff cannot demonstrate that the attorney's fees provision touches, let alone runs with, the land [and that] [c]onsequently, Defendant [Crown Castle] is not subject to the attorney's provision." D.E. 166 at 5.

Essentially, RJI claims that the district court should have found that the phrase "parties hereto" used in the Fee Provision extends its application to RJI and Crown Castle as "successors." Appellant's Br. at 10. However, in addition to having no support in the law, RJI's argument is fundamentally flawed because neither RJI nor Crown Castle are successors to the original parties to the Easement Agreement. To

17

bolster its claim, RJI incorrectly asserts that RJI is a successor of Hidden Valley, and that Crown Castle is a successor of Bellsouth.  *Id*. at 1 ("The agreement was entered by RJI's predecessor in interest;" "Crown Castle is "the dominant estate's successor in interest."); *Id.* at 12 ("[T]he parties' predecessors entered into the easement agreement [… which] was entered in favor of the successors.").  RJI's incorrect assertions create the impression that the original covenanting parties Hidden Valley and Bellsouth have relinquished, assigned, or otherwise transferred their rights as Grantor and Grantee to RJI and Crown Castle, respectively, which is simply not true based on the record.  Alternatively, these assertions suggest that RJI is a corporate successor entity of Hidden Valley stepping into its shoes as Grantor, and that similarly, Crown Castle is a corporate successor entity of Bellsouth stepping into its shoes as Grantee—another incorrect assertion based on the record.

The reality is that RJI confuses its status as a purchaser and subsequent fee owner of the Easement Property with that of a successor of Hidden Valley.  RJI also confuses Crown Castle's status as Bellsouth's sublessee with that of a successor of Bellsouth.  As RJI concedes, it "acquired its property subject to the existing easement agreement," but the acquisition did not result in RJI becoming a party to the Easement Agreement because it did not replace Hidden Valley as Grantor.  Appellant's Br. at 12.  RJI is merely a third-party owner of a servient estate subject to an easement.  While RJI's status as the current owner of a servient estate affords

it the right to enforce the easement, it does not render RJI a successor of Hidden Valley, a Grantor, or a party to the Easement Agreement. Likewise, Crown Castle is not a party to the Easement Agreement, because it has not replaced Bellsouth as Grantee.

Thus, to extend "parties hereto" to RJI and Crown Castle would effectively create two sets of parties to the Easement Agreement—a concept, which is not only contrary to the agreement, but also an absurd result. Ultimately, RJI and Crown Castle are not parties to the Easement Agreement, and they are not successors to the original parties. As a result, the Fee Provision, negotiated and agreed to by Hidden Valley and Bellsouth, does not apply to RJI and Crown Castle.

Contrary to RJI's claim, *a third party* "who has the right to enforce the agreement" cannot be, and is not, considered "a 'party' to the easement agreement." Appellant's Br. at 10. In this regard, RJI's misreads the cases it cites. *Id*. at 10-11. *Kirschner v. Baldwin* concerned a subdivision's Declaration of Restrictions, Limitations, Conditions, and Agreements ("Declaration") and a lot owner's suit to enforce a setback restriction from the Declaration. *Kirschner v. Baldwin*, 988 So. 2d 1138 (Fla. 5th DCA 2008). The issue was whether the lot owner had "standing to assert her claim because the Declaration did not expressly grant lot owners the right to enforce the subdivision restrictions." *Id*. at 1141. The court held that the lot owner had standing because the "Declaration specifically provided that the covenants and

19

restrictions inured to the benefit of all lot owners" and "[a]s a clearly intended beneficiary of the Declaration, [the lot owner] had the right to enforce the subdivision's restrictions. *Id*. The court did not hold that the lot owner's ability to enforce the Declaration rendered the lot owner a "party" to the Declaration. In fact, the word "party" does not appear in the court's opinion.

### (i) Florida law strictly construes attorney's fee provisions.

Under Florida law, a "contractual attorney's fee provision must be strictly construed." *Succar Succar v. Safra Nat'l Bank of New York*, 237 F. App'x 526, 528 (11th Cir. 2007) (internal citations omitted); *see also Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335–36 (11th Cir. 2018). "An agreement for one party to pay the attorney's fees of another party must unambiguously state that intention, and a litigant seeking attorney's fees under the contract **must be a party to the contract**." 12 Fla. Jur. 2d Costs § 82 (2021) (*emphasis added*). Furthermore, "'[a] contract cannot bind one who is not a party thereto,' because in order to create an enforceable contract, there must be 'reciprocal assent to a certain and definite proposition.'" *In re University Centre Hotel, Inc*., 323 B.R. 306, 309 (N.D. Fla. 2005) (internal citations omitted) (denying attorney's fees to an entity that "did not sign the [contract containing the attorney's fee provision] in any capacity and is therefore not a party to it" notwithstanding that the entity had some rights arising from the contract due to its status as the first lienholder); *see also PNC Bank,*

20

*Nat'l Ass'n v. MDTR, LLC*, 243 So. 3d 456, 457 (Fla. 5th DCA 2018) (denying attorney's fees to a subsequent property owner who purchased property subject to a mortgage without assuming the mortgage contract containing the attorney's fee provision and holding that the subsequent owner "was not a party to the mortgage and therefore was not entitled to prevailing party attorney's fees"); *Sand Lake Hills Homeowners Ass'n v. Busch*, 210 So. 3d 706, 709 (Fla. 5th DCA 2017) ("a stranger to the contract cannot recover attorney's fees based on the contract"); *Civix Sunrise, GC, L.L.C. v. Sunrise Road Maintenance Ass'n, Inc*., 997 So. 2d 433 (Fla. 2d DCA 2008) (reversing award of attorney's fees to defendants who were "not signatory parties to the lease" containing a fee provision "notwithstanding their status as third-party beneficiaries under other provisions of the lease"); *Schwartz v. W-K Partners*, 530 So. 2d 456 (Fla. 5th DCA 1988) (reversing judgment awarding attorney's fees to a defendant given that the defendant "was not a party to the contract, [such that] he cannot rely on [contractual fee] provision as the basis for the award of attorney's fees"); *Mims/Alafia, LLC v. Mosaic Fertilizer, LLC*, No. 8:05-cv-2271-T-26EAJ, 2007 WL 2071319, at *2 (M.D. Fla. July 19, 2007) (denying plaintiff entitlement to attorney's fees "as a matter of law" because plaintiff "cannot recover attorney's fees … pursuant to a contract [easement] to which it was not a party").

Here, RJI and Crown Castle are not parties to the Easement Agreement or the Fee Provision. RJI cannot therefore recover attorney's fees from Crown Castle.

### *(ii) Florida law construes arbitration provisions broadly based on public policy that favors arbitration.*

RJI ignores Florida law requiring that the Fee Provision be construed strictly, and instead cites inapposite arbitration cases that require arbitration clauses to be construed broadly in favor of their enforcement.  RJI points to *Ocwen Fin. Corp. v. Holman* and *Koechli v. BIP Intern., Inc.*, both of which involved disputes about the applicability of arbitration provisions between signatories and non-signatories.[13]  In *Ocwen*, the court considered the meaning of "party"—not "parties ***hereto***" or "either party ***hereto***" as is found in the Fee Provision—to determine whether a non-signatory could compel arbitration against a signatory based on the following arbitration clause contained in an asset purchase agreement:

> 14.12.1 It is the intention of the parties that disputes arising under this agreement, if not resolved by discussion among the parties, shall be resolved through arbitration. Any controversy or claim *between Buyer and Seller or between Buyer and the Admiral Owners* arising out of or relating to *this Agreement or agreements or instruments relating hereto or delivered in connection herewith, including, but not limited to, a claim based on or arising from any alleged tort,* will, at the request of any party, be determined by binding arbitration.  (*Emphasis in original.*)

> *Ocwen Fin. Corp. v. Holman*, 769 So. 2d 481, 482 (Fla. 4th DCA 2000).

---

[13]   The dispute on entitlement to attorneys' fees and costs in this case involves <u>*two*</u> non-signatories.

Interpreting the "arbitration clause broadly" and resolving a doubt about the scope of the clause "in favor of arbitration," as required by arbitration law, the court allowed a non-signatory to the arbitration clause (Ocwen) to invoke arbitration against a signatory on the basis that another related agreement to which Ocwen was a party "was delivered in connection with the asset purchase agreement [containing the arbitration clause] and fell within the language of that agreement's arbitration clause." *Ocwen*, 769 So. 2d at 483. *Ocwen* was an arbitration case involving a differently worded arbitration (not attorney's fees) clause, where the court's ruling was fact-specific and based on dissimilar facts. As a result, *Ocwen* is entirely distinguishable and inapplicable on the meaning of the terms "parties hereto" and "either party hereto" used in the Fee Provision. More importantly, the *Ocwen* court did not hold that the non-signatory became a party to the asset purchase agreement simply because a broad reading of the word "party" as used in the arbitration clauses allowed a non-signatory to compel arbitration.

Similarly, in *Koechli*, the court had to determine whether non-signatories could compel arbitration against a signatory to an arbitration agreement which required arbitration "of any dispute between the parties hereto as to any matter arising out of or relating to this Contract." *Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 945 (Fla. 1st DCA 2004). The court first rejected the non-signatories' argument that they could invoke arbitration against the signatory based on a broad reading of

the agency exception to the strict enforcement of arbitration clauses: namely, that the non-signatories were an agent of the other signatory. The court, however, opined that a "non-signatory agent should be permitted to compel arbitration:"

> when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory .... [or] when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

> *Koechli*, 870 So. 2d at 944.

The *Koechli* court held that, since the signatory filed a lawsuit alleging claims which "arise out of or are intimately related to" the agreement containing the arbitration clause, the signatory was "estopped from denying the [non-signatories] the benefit of the arbitration provision." *Id*. at 945. The court next acknowledged that neither side had "supplied any directly-on-point authority for the meaning of 'party' and 'third party' under these [arbitration] provisions." *Id*. The court then concluded "that, in the context of the unique facts of this case, for the purposes of involving the arbitration provision the word 'party' includes [the non-signatories]" because the non-signatories "received rights and assumed obligations under the refurbishment agreement and the claims against them arose from actions in their capacity as agents or an officer of Alpha, a signatory under the agreement." *Id*. at 945-46.

24

Guided by law and policy deliberately favoring arbitration, the court's ruling in *Koechli* was based on "unique facts"—more specifically, a signatory suing non-signatories on claims relating to the agreement containing the arbitration clause and arising from the non-signatories' conduct as agents of the other signatory. Those "unique facts" are different and distinct from the present case, where neither RJI nor Crown Castle was a signatory to the agreement. In addition, *Koechli* addressed the application of an arbitration clause, which is distinguishable from the present case.

Thus, *Ocwen* and *Koechli* are distinguishable and limited to the arbitration context. They do not support RJI's claim that its ability as an affected third party to enforce the Easement Agreement somehow renders it a "party hereto" for the purposes of the Fee Provision. In fact, the main issue in both cases was whether the non-signatories *could* enforce the arbitration clauses based on the specific facts and relationships therein. The same issue is not present here, as RJI, as a burdened party, has standing to enforce the Easement Agreement, separate and independent of the text of the Easement Agreement.

In reliance on inapplicable cases, RJI seeks to diverge from the favored and long-standing American Rule. RJI plainly seeks an outcome in this appeal that is contrary to the American Rule, based on arbitration cases that do not interpret attorney's fee provisions and do not require strict construction of the terms "parties hereto" and "either party hereto."

\*        \*        \*

In sum, RJI's "successor" and "party" arguments are not pertinent to the dispositive issue on appeal, and the district court correctly need not have considered them, given its ruling that RJI and Crown Castle were not parties to the Easement Agreement but were only third parties who were related to the easement in their capacities as subsequent fee owner and sublessee, respectively. The district court did not abuse its discretion in disregarding arguments made below that did not comport with the circumstances of this case. The Court should therefore affirm the district court's denial of entitlement to attorney's fees.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the district court's order denying entitlement to attorney's fees.

Respectfully submitted,

*/s/ Eve A. Cann*

Eve A. Cann
Desislava K. Docheva
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
100 S.E. Third Avenue, Suite 1620
Fort Lauderdale, FL 33394
(954) 768-1600
ecann@bakerdonelson.com
ddocheva@bakerdonelson.com

-and-

Joshua Tropper
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
3414 Peachtree Road, NE, Suite 1500
Atlanta, GA 30326
(404) 577-6000
jtropper@bakerdonelson.com

*Counsel for Defendant-Appellee*

Dated: December 14, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this document contains less than 13,000 words – more specifically, it contains 6,498 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman.

Dated:  December 14, 2022

*/s/ Eve A. Cann*
Eve A. Cann

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Eve A. Cann*
Eve A. Cann
